IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 22, 2010 Session

## ARTHUR A. WINQUIST, et al., v. JAMES A. GOODWIN, et al.

**Appeal from the Chancery Court for Rhea County**
**No. 10219     Hon. Jeffrey F. Stewart, Chancellor**

**No. E2009-02597-COA-R3-CV - FILED OCTOBER 28, 2010**

This case was precipitated when defendants blocked plaintiffs' use of an existing driveway. Plaintiffs brought this action for a declaratory judgment and following an evidentiary hearing, the Trial Court ruled that plaintiffs had a prescriptive easement to use the driveway and that defendants would be required to restore the driveway as well as the excavations damaging plaintiffs' lots.  On appeal, we affirm.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and John W. McClarty, J., joined.

Susie Lodico and Gary R. Patrick, Chattanooga, Tennessee, for the appellants, James A. Goodwin and Verna K. Goodwin.

Rebecca L. Hicks, Dayton, Tennessee, for the appellees, Arthur A. Winquist and Judith Winquist.

**OPINION**

Plaintiffs, Arthur and Judith Winquist, filed their Complaint against James and Verna Goodwin, seeking a declaratory judgment regarding the parties' adjoining parcels of property in Rhea County.  Plaintiffs charged the parties owned property in Lakewood Village Subdivision, and that for over twenty years, plaintiffs and their predecessors had accessed

their property using a private driveway from Lookout Drive. Plaintiffs stated that defendants had now blocked the driveway and were preventing plaintiffs' use.

Plaintiffs further alleged the driveway was the only means of access to their residence and had been since 1982. They claimed that they obtained use to the driveway through adverse possession, and that their use of the same had been open, notorious, continuous and exclusive for over 20 years. Alternatively they claimed a prescriptive easement. They stated that they also owned other lots in the subdivision. Plaintiffs charged that defendants had trespassed on their property and wrongfully cut trees and deposited debris and garbage, and sought treble damages for the removal of their timber pursuant to Tenn. Code Ann. §43-28-312, and asked for a temporary restraining order to prevent defendants from blocking their driveway. The Court issued a temporary restraining order preventing defendants from continuing to block the driveway.

Defendants answered, and denied the material allegations of the Complaint, and asserted the defenses of waiver, release, and statute of limitations. Plaintiffs amended their Complaint by adding the allegation that defendants entered onto lots 456-459, owned by plaintiffs, and performed extensive excavation which damaged the lots by dramatically changing the contour and elevation of the lots as they join Lookout Drive. Plaintiffs concluded that defendants' actions were without their knowledge or consent, and that the damage caused would require extensive restoration work.

The Trial Court conducted an evidentiary hearing on the issues, where numerous witnesses testified. At the conclusion of the evidentiary hearing, the Trial Court ruled from the bench and found that plaintiffs' only means of ingress and egress was via the driveway which was installed in 1982. The Court found that the driveway had been utilized by plaintiffs' predecessors for more than 20 years. The Court found the driveway was still intact when plaintiffs bought the property, and that shortly after plaintiffs bought the property, defendants obliterated the driveway and installed fencing that blocked plaintiffs' access. The Court found that defendants also increased the height of the bank and caused erosion, and that the higher bank made some of plaintiffs' lots inaccessible. Further, the Court found that Goodwin moved Lookout Drive without the other owners' permission, and that the work benefitted Goodwin but not plaintiffs.

The Court found that plaintiffs' predecessors' use of the driveway which crossed Goodwin's lot was shown by clear and convincing evidence to have been for more than 20 years, and that plaintiffs had proven a prescriptive easement. The Court observed that Tennessee law said a co-owner could improve an easement so long as it did not create an undue burden or cause unwarranted interference with other owners, but that defendants' actions here created a steeper bank and erosion and caused an undue burden and unwarranted

interference with plaintiffs.

The Court held plaintiffs were entitled to have the bank restored to its previous height/slope, and to have Lookout Drive restored to its previous location, if necessary. The Court found that defendant should have the option of performing this work since he had done the other work himself, and the defendants were ordered to remove the fence and were enjoined from blocking plaintiffs' access to the driveway, and that the driveway had to be restored to its original location. The Court also ordered plaintiffs' oil line to be repaired.

Defendants filed a Notice of Appeal, and the following issues are raised on appeal:

1. Whether the Trial Court erred in its ruling that the plaintiffs were entitled to any recovery related to the bank along Lookout Drive?

2. Whether the Trial Court erred in its ruling that the plaintiffs were entitled to a prescriptive easement over the defendants's property for their driveway?

3. Whether the Trial Court erred in its denial of defendants' motion for a continuance?

4. Whether the Trial Court erred in its refusal to admit evidence related to other banks within the same subdivision?

5. Whether the Trial Court erred in its refusal to hear testimony and evidence from defendants' expert?

Defendants argue that it was error for the Trial Court to order that Lookout Drive and the bank along lots 456-459 had to be restored to their original condition before the extensive excavation and road work undertaken by defendants. The parties agree that defendants could not make alterations to this common easement which would render the easement less useful to the co-owners or which injuriously affects the other owners. The evidence in this case clearly preponderated that the excavation and road work done by defendants rendered the easement less useful to plaintiffs, and injuriously affected their property rights. Several witnesses testified that the slope of the bank along plaintiffs' lots, after defendants "improved the road", was such that gaining access to the lots would be nearly impossible, and certainly very costly. There was also evidence that the slope of the bank as it was left by defendants was unstable and would continue to erode unless corrective measures were taken.

Defendants argue that plaintiffs did not meet their burden of proof for the strict liability tort of destruction of lateral support, but, as plaintiffs counter, all that must be shown

is that defendants excavated and caused injury to the adjoining land in its natural state. As our Supreme Court has explained:

> Landowners who excavate or improve their land are compelled to do so in a manner that protects adjoining property in its natural state from collapsing or eroding away. A landowner is not prohibited from excavating into the natural soil along a boundary line, but must replace by artificial means the natural support removed in the process. Strict liability attaches for damage caused by removing the naturally necessary lateral support of land in its natural state, with no proof of negligence required.

*XI Properties, Inc. v. RaceTrac Petroleum, Inc.*, 151 S.W.3d 443 (Tenn. 2004).

We reiterate that the evidence preponderates that defendants not only changed the slope of the bank such that it was more vertical, but also that the height of the bank was more than doubled, and that there was significant erosion occurring.

Defendants argue, however, that plaintiffs failed to prove their damages as the proper measure of damages would be the difference in market value of the property before and after the injury. Defendants rely upon the case of *Williams v. Southern Railway Co.*, 396 S.W.2d 98 (Tenn. Ct. App. 1965), for the proper measure of damages:

> The measure of these damages, being to real estate, would be the difference between the reasonable market value of the premises immediately prior to and immediately after the injury, provided the cost of repairing the injury to the property would be more than the depreciation in its value as the result of the injury, but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair would be the lawful measure of damages.

Thus it is argued that since plaintiffs failed to prove the difference in fair market value of their property before and after the excavation was done, the Trial Court did not properly award damages.

The Trial Court did not award damages, but rather ordered that the bank should be restored to its original height and slope. This is also a proper remedy pursuant to the *XI Properties* case cited. Clearly, the Trial Court has discretion to fashion an appropriate remedy in these cases, i.e., restoration or restitution, and the Trial Court did not abuse its discretion in this case. The Trial Court relied upon the fact that defendant "is in the construction and real estate development business and had the means to move the driveway". We find this issue is without merit.

Next, defendants argue that plaintiffs failed to establish a prescriptive easement in the driveway. As this Court explained in *Gore v. Stout*, 2008 WL 450597 (Tenn. Ct. App. Feb. 19, 2008):

> An easement is an interest in another's real property that confers on the easement holder an enforceable right to use that real property for a specific use. The most common form of an easement is a right of passage across another's property. In Tennessee, easements can be created in several ways: (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain. A prescriptive easement is an implied easement that is premised on the use of the property rather than language in a deed. To create a prescriptive easement, the use and enjoyment of the property must be adverse, under a claim of right, continuous, uninterrupted, open, visible, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. The proponent must prove each of the elements by "clear and convincing evidence." In Tennessee the prescriptive period is twenty years.

(Citations omitted).

Defendants argue that the plaintiffs could not establish a prescriptive easement in this case because they did not use the land themselves for the requisite twenty year period, and thus could not meet this time requirement without "tacking" their use on to that of their predecessors.

Plaintiffs acquired the property from Timothy Woodall, who owned it from 2003-2006, and in the deed from Woodall to plaintiffs, Woodall specifically referenced a "driveway easement" per the recorded plat. Timothy acquired the lot from his father, Eugene Woodall, who testified that he owned the property from 1982 to 2003, and that he used the driveway the entire time, even though it was not included in his deed. Defendants do not argue that he failed to meet any of the other requirements for a prescriptive easement.

Defendants do argue, however, that plaintiffs cannot tack on Mr. Woodall's adverse use of the property in order to meet the twenty-year requirement because there was no proof that when Mr. Woodall transferred the property to his son, Timothy, in 2003, that the disputed driveway was included in the description. As we have previously stated, "[t]he contractual intention to connect successive adverse possessions through tacking requires the property claimed through the judicial mechanism to establish a prescriptive easement be described in the deed transferring ownership between the adverse possessors, or be established through parol evidence sufficient to establish the buyer's right of reasonable reliance on representations made by the buyer's predecessor relating to the transfer of

-5-

ownership." *Thompson v. Hulse*, 2000 WL 124787 (Tenn. Ct. App. Jan. 26, 2000). Thus, defendants argue that plaintiffs cannot successfully apply the rule of "tacking" in this case to establish the requisite twenty year period.

We have also previously ruled, however, that the rule of legal privity required for such "tacking" has many exceptions, and is satisfied by the parent/child relationship, as well as by the reliance of the grantee on the grantor's representations regarding ownership. *Id.* While the record is devoid of any evidence regarding what Timothy knew or believed regarding this driveway, there is no dispute that Eugene and Timothy Woodall are, in fact, parent and child. As such, Timothy Woodall's possession could be tacked to that of his father, and plaintiffs' possession can be tacked to Timothy Woodall's via the language contained in plaintiffs' deed, such that the requisite twenty year period has clearly been established. This issue is without merit, and the Trial Court properly found that a prescriptive easement in the driveway had been proven.

Defendants argue that the Trial Court erred in failing to grant them a continuance in this case, asserting that neither party had sought any prior continuances. Plaintiffs assert, however, that two prior continuances were granted in this case, and that the case had been pending for nearly three years at the time of trial.[1]

Both parties acknowledge that the Trial Court's decision denying a continuance will not be disturbed on appeal absent a showing that the Court abused its discretion and the party seeking a continuance was prejudiced. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413 (Tenn. 1997). Appellate courts will only find that a trial court "abused its discretion" when the court has applied an incorrect legal standard, has reached a decision that is illogical, has based its decision on a clearly erroneous assessment of the evidence, or has employed reasoning that causes an injustice to the complaining party. *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn.2001).

In this case, the record does not contain anything regarding the Trial Court's basis for denying a continuance to defendants, but the fact that the case had been pending for nearly three years at the time of trial established a basis to support the Trial Court's decision. The only reason provided for seeking a continuance (in the motion filed two days before the trial date) is that the parties had been in settlement negotiations and were hopeful that they would be able to settle if given more time. Since the parties had nearly three years to work out a settlement, and it had not been accomplished, it would appear that the Trial Court did not abuse its discretion in failing to allow additional time. There was no showing that the Court has applied an incorrect legal standard, reached a decision that is illogical, based its decision

---

[1] The record contains no information about prior continuances.

-6-

on a clearly erroneous assessment of the evidence, or has employed reasoning that causes an injustice to the complaining party. The defendants will not be heard to complain of their own failure to prepare for a trial in a case that had been pending for approximately three years.

Defendants further argue that the Trial Court erred in excluding evidence regarding the steepness of other banks within the subdivision. This evidence was not relevant, however, to the question of how defendants' admitted excavation and road work along the lots in question altered those banks. The question was not whether having steep banks was acceptable or expected, it was whether defendants' admitted actions interfered with plaintiffs' use of their property and removed necessary lateral support. The Trial Court did not err in excluding this evidence.

Finally, defendants argue that the Trial Court erred in excluding the testimony of defendants' expert. Defendants' counsel admitted at trial that she had a duty to disclose any expert witnesses and that she did not disclose their expert until two days before trial, which the Trial Court thought was too late. Again, this decision is reviewed under an abuse of discretion standard, such that the Trial Court's decision will not be reversed unless the Trial court has violated the standard enunciated in this opinion on the issue of continuance. . *See Clinard*.

Appellate courts will not disturb discretionary decisions by the Trial Court where reasonable minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). We hold that the Trial Court's discretion to exclude defendants' expert witnesses, given the circumstances surrounding his disclosure, renders this issue without merit.[2]

We affirm the Judgment of the Trial Court and remand, and assess the cost of the appeal to James and Verna Goodwin.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[2] Reviewing the offer of proof, the testimony given by defendants' expert would not have aided the Trial Court in resolving the issues in this case.